11th
Court of Appeals

                                                                  Eastland,
Texas

                                                             Memorandum
Opinion

 

In the Interest of F.A.R., a child 

No. 11-04-00014-CV -- Appeal from
Midland County

 

After a bench trial, the trial court entered an
order terminating the parental rights of Kelly Dawn Rodriquez and Tommy Flores
Rodriquez to their child, six-year-old F.A.R. 
Kelly Rodriquez (Rodriquez) appeals from the trial court=s order terminating her parental
rights.[1]  We affirm.

                                                   Factual
and Procedural Background

F.A.R. was born in December 1996.  Rodriquez has a long history of drug
abuse.  The Texas Department of Family
and Protective Services (CPS) removed F.A.R. from Rodriquez in 2002 and again
in 2003 as a result of problems related to Rodriquez=s
drug abuse.  CPS brought this cause
seeking to terminate Rodriquez=s
parental rights to F.A.R. so that F.A.R. could be adopted by his foster
parents, Christina and Arturo Hernandez. 

CPS designated Beverly Hutchins, a CPS employee,
as an expert witness.  CPS stated that
Hutchins would testify, based on her training and experience, Athat long term foster care is not in
the best interest of a child and that a child=s
needs are better served by a permanent adoptive placement.@ Rodriquez learned that the trial
judge, the Honorable Sylvia A. Chavez, had held a meeting with Hutchins about two
weeks before the scheduled trial date. 
Based on the meeting, Rodriquez filed a motion to recuse Judge Chavez
from hearing this case.  The Honorable
John G. Hyde presided over the motion to recuse.  After hearing evidence that the subject
matter of the meeting was unrelated to this case, Judge Hyde denied the motion
to recuse.  Rodriquez also sought to
strike Hutchins as an expert witness based on the meeting.  The trial court denied Rodriquez=s motion. 

At the time of trial, F.A.R. was living with the
Hernandezes.  Christina Hernandez
testified that she and her husband wanted to adopt F.A.R.  CPS asserted that it would be in F.A.R.=s best interest if the Hernandezes
adopted F.A.R.








At trial, Rodriquez testified that she was an
alcoholic and a drug addict.  She
described her extensive drug use and abuse which has taken place during F.A.R.=s lifetime.  At trial, she stipulated that she had engaged
in conduct that had endangered F.A.R. 
Rodriquez testified that she was not ready to provide adequate care for
F.A.R., but she thought that she would be able to provide adequate care for F.A.R.
in a year.  Therefore, she asked the
trial court to keep F.A.R. in foster care for another year.  

CPS introduced additional evidence establishing
the extent of Rodriquez=s
drug abuse and her endangerment of F.A.R. 
CPS also showed that Rodriquez had undergone drug treatment on two
occasions but that she had relapsed into drug use immediately after leaving the
treatment facilities.  CPS also
introduced evidence that keeping F.A.R. in prolonged foster care was not in
F.A.R.=s best
interest. 

The trial court entered a finding that termination
of Rodriquez=s
parental rights was in F.A.R.=s
best interest. 

Issues Presented on Appeal 

Rodriquez presents three issues for review.  In her first two issues, Rodriquez argues (1)
that the trial court erred in denying the motion to recuse Judge Chavez and (2)
that the trial court (Judge Chavez) erred in denying her motion to strike
Hutchins as an expert witness.  In her
third issue, she contends that the evidence was factually insufficient to
support the trial court=s
finding that termination of her parental rights was in F.A.R.=s best interest.   

                                                         Denial
of Motion to Recuse

We review a trial court=s
ruling on a motion to recuse under an abuse of discretion standard.  Lueg v. Lueg, 976 S.W.2d 308, 310
(Tex.App. - Corpus Christi 1998, pet=n
den=d). 
TEX.R.CIV. P.18b(2)(a) provides that a judge Ashall
recuse himself in any proceeding in which: 
his impartiality might reasonably be questioned.@  The test for recusal under Rule 18b(2)(a) is
whether a reasonable member of the public, knowing all the facts concerning the
judge=s
conduct, would have a reasonable doubt that the judge is actually
impartial.  Rogers v. Bradley, 909
S.W.2d 872, 881 (Tex.1995).  








In this case, CPS designated Hutchins as an expert
witness on October 31, 2003.  Hutchins
was the adoption specialist for CPS.   At
the hearing on Rodriquez=s
motion to recuse, Hutchins testified about her November 14, 2003, meeting with
Judge Chavez.  She testified as
follows:  (1) that Judge Chavez requested
the meeting; (2) that Judge Chavez wanted to learn about CPS=s adoption policies and procedures; (3)
that the meeting took place in a room adjacent to Judge Chavez=s courtroom; (4) that she and Judge
Chavez were the only people present at the meeting; (5) that, as of the date of
the meeting, she (Hutchins) did not know the particular facts of this case; (6)
that the meeting dealt with CPS=s
adoption system, policies, procedures, and requirements for adoption; (7) that
she and Judge Chavez did not discuss issues relating to the best interests of
children; (8) that she and Judge Chavez did not discuss any specific cases,
including this case; (9) that she and Judge Chavez did not discuss whether or
not it would be in the best interest of F.A.R. to have Rodriquez=s parental rights terminated; (10) that
she and Judge Chavez did not discuss the factors that CPS considers when determining
whether it would be in a child=s
best interest to be adopted; (11) that she and Judge Chavez did not discuss the
long-term ramifications of permanent foster care on children; and (12) that,
before the date of the meeting, she had testified as an expert witness in a
case in which Judge Chavez was the presiding judge.  

Hutchins was the only witness at the hearing.  Her testimony established that Judge Chavez
wanted to obtain general information about CPS=s
adoption policies and procedures.  Her
testimony also established that the meeting did not relate to the specific
facts of this case.  Hutchins and Judge
Chavez did not discuss this case.  Under
these facts, a reasonable member of the public, knowing all the facts
concerning Judge Chavez=s
meeting with Hutchins, would not have a reasonable doubt that Judge Chavez was
actually impartial.  Rogers v. Bradley,
supra at 881.  The trial court did
not err in denying Rodriquez=s
motion to recuse Judge Chavez.  Rodriquez=s second issue is overruled.

                                Denial
of Rodriquez=s Motion
to Strike Hutchins as an Expert

Rodriquez contended that, because Judge Chavez and
Hutchins discussed matters directly related to the subject matter of this cause
at their meeting, allowing Hutchins to testify at trial would give CPS an
unfair advantage at trial.  We review a
trial court=s rulings
on admitting or excluding evidence under an abuse of discretion standard.  Horizon/CMS Healthcare Corporation v. Auld,
34 S.W.3d 887, 906 (Tex.2000); Owens-Corning Fiberglas Corporation v. Malone,
972 S.W.2d 35, 43 (Tex.1998).  








Hutchins=s
testimony at the hearing on the motion to recuse established that she and Judge
Chavez did not discuss the facts of this case or the issues involved in this
case. On appeal, Rodriquez contends that the fact that Hutchins met with Judge
Chavez Aimpacts
negatively upon the Court=s
discretion to determine if a witness should testify before it.@ 
However, Rodriquez did not question Hutchins=s
qualifications as an expert witness at trial; Rodriquez did not object on the
ground that Hutchins was not qualified to testify as an expert witness at
trial.  The record does not demonstrate
that Hutchins was not qualified to testify as an expert witness.  Nothing in the record indicates that the
meeting in any way influenced the trial court=s
determination that Hutchins could testify in the case or the trial court=s consideration of the weight to be
given to Hutchins=s
testimony.  Thus, the record does not
establish that the trial court abused its discretion in denying Rodriquez=s motion to strike Hutchins as an
expert witness.  Rodriquez=s first issue is overruled.

                                              Termination
of Rodriquez=s
Parental Rights

A court may order involuntary termination of
parental rights only if the court finds (1) that a parent has committed a
predicate act or omission harmful to the child and (2) that termination is in
the best interest of the child.  TEX.
FAM. CODE ANN. '161.001
(Vernon 2002); In re B.L.D., 113 S.W.3d 340, 353-54 (Tex.2003).  The court must ensure that these findings are
made by clear and convincing evidence.  In
re B.L.D., supra.  Section
161.001(1)(D) allows for termination of parental rights if the parent Aknowingly placed or knowingly allowed
the child to remain in conditions or surroundings which endanger the physical
or emotional well-being of the child.@  Rodriquez stipulated that she engaged in the
conduct set forth in Section 161.001(1)(D). 
Section 161.001(1)(E) allows for termination of parental rights if the parent
Aengaged in conduct or knowingly placed
the child with persons who engaged in conduct which endangers the physical or
emotional well-being of the child.@  The trial court found by clear and convincing
evidence that Rodriquez (1) had knowingly placed or knowingly allowed F.A.R. to
remain in conditions or sur-roundings which endangered the physical or
emotional well-being of F.A.R. and (2) had engaged in conduct or knowingly placed
F.A.R. with persons who engaged in conduct which endangered the physical or
emotional well-being of F.A.R. 








Rodriquez does not challenge the trial court=s findings that she had endangered
F.A.R. as set forth in Section 161.001(1)(D) and Section 161.001(1)(E);
Rodriquez challenges only the trial court=s
finding that termination of her parental rights was in F.A.R.=s best interest.  She argues that the evidence was factually
insufficient to support the finding.  In
a factual sufficiency review, we must give consideration to evidence that the
fact finder could reasonably have found to be clear and convincing.  In re C.H., 89 S.W.3d 17
(Tex.2002).  In reviewing the factual
sufficiency of the evidence, we determine whether the evidence is such that a
fact finder could reasonably form a firm belief or conviction about the truth
of the State=s allegations.  In re C.H., supra.  In deciding whether the evidence is
sufficient to support the trial court=s
finding that termination is in the child=s
best interest, we are guided by the nonexclusive list of factors set forth in Holley
v. Adams, 544 S.W.2d 367, 371-72 (Tex.1976).  Those factors include: (1) the desires of the
child; (2) the emotional and physical needs of the child now and in the future;
(3) the emotional and physical danger to the child now and in the future; (4)
the parental abilities of the individuals seeking custody; (5) the programs
available to assist these individuals to promote the best interest of the
child; (6) the plans for the child by these individuals or by the agency
seeking custody; (7) the stability of the home or proposed placement; (8) the
acts or omissions of the parent which may indicate that the existing
parent-child relationship is not a proper one; and (9) any excuse for the acts
or omissions of the parent.  Holley v.
Adams, supra at 371-72; In re D.M., 58 S.W.3d 801, 814
(Tex.App. - Fort Worth 2001, no pet=n).

CPS, in part, relies on Rodriquez=s history of drug use and instability
as evidence supporting the trial court=s
best-interest finding.  The evidence at
trial established that Rodriquez has a long history and pattern of drug abuse;
she is an alcoholic and a drug addict. 
She has used marihuana, crack, cocaine, methamphetamine, and
heroin.  She has tested positive for
marihuana and cocaine. Rodriquez testified that she used drugs while F.A.R. was
under her care; she took care of F.A.R. while she was under the influence of
drugs.  Rodriquez helped cook
methamphetamine in her house when F.A.R. was living in the house.  She said that, while F.A.R. was under her
care, he lived the vast majority of his life in a drug-use environment.  CPS removed F.A.R. twice as a result of her
drug abuse.  The evidence established
that Rodriquez went through two drug treatment programs but immediately started
using drugs again after leaving the programs.   









The evidence demonstrated that Rodriquez has not
been able to provide for F.A.R.=s
emotional and physical needs; she did not provide him with a stable and secure
home environment because of her drug abuse. 
There was no evidence that Rodriquez would be able to provide him with a
stable home environment in the future. 
Her continued drug use B
even after undergoing two drug treatment programs B
demonstrates an inability to provide a stable environment for F.A.R. and an
inability to provide for his emotional and physical needs.  Rodriquez stipulated that she had endangered
F.A.R. in the past.  Based on the
evidence, the trial court could have concluded that Rodriquez could not
appropriately care for F.A.R.=s
physical and emotional well-being in the future.  The evidence also showed that Rodriquez did
not have the parental ability to properly care for F.A.R.  She admitted that she did not have the ability
to take care of him at the time of trial. 

Rodriquez requested the trial court to keep F.A.R.
in foster care for another year.  CPS
presented evidence that foster care should be temporary in nature and that
prolonged, indefinite periods of foster care have adverse effects on children.  CPS also presented evidence that Rodriquez needed
counseling in order to become an appropriate parent.  Rodriquez testified that she did not believe
that counseling would help her; she did not believe that counseling was
necessary.  The trial court could have
concluded that Rodriquez would never have the ability to provide a proper
parent-child relationship for F.A.R. 

           The Hernandezes have provided F.A.R. with a
stable home environment while he has been with them.  Rodriquez testified that the Hernandezes Awere really good@
with F.A.R.  The Hernandezes, who already
have adopted two children, want to adopt F.A.R. and, therefore, provide to
F.A.R. a permanent stable home environment. 
CPS presented evidence that adoption, as opposed to a prolonged period
of foster care, is in F.A.R.=s
best interest.  Based on the evidence,
the trial court could have concluded that the Hernandezes can provide F.A.R.
with a stable home environment.

In light of the Holley factors, we find
that the evidence was factually sufficient to support the trial court=s finding that termination of Rodriquez=s parental rights is in the best
interest of F.A.R.  Rodriquez=s third issue is overruled.

 








                                                                This
Court=s Ruling

The judgment of the trial court is affirmed.

 

TERRY McCALL

 JUSTICE

 

January 13, 2005

Not designated for publication. 
See TEX.R.APP.P. 47.2(a).

Panel
consists of:  Arnot, C.J., and 

Wright,
J., and McCall, J.











    
[1]Tommy Rodriquez is not a party to this appeal.